Argued and submitted March 16, affirmed in part and remanded with instructions May 6, Seibel's reconsideration denied July 2, Liberty Home's reconsideration denied July 17, both petitions for review allowed August 4, 1987 (303 Or 699)
See later issue Oregon Reports

## SEIBEL,
*Respondent,*

*v.*

## LIBERTY HOMES, INC.,
*Appellant.*

(82-1214; CA A38803)

736 P2d 578

G. Kenneth Shiroishi, Portland, argued the cause for appellant. With him on the briefs were Michael J. Francis, Douglas Van Dyk and Dunn, Carney, Allen, Higgins & Tongue, Portland.

James L. Francesconi, Portland, argued the cause for respondent. With him on the brief was Francesconi & Cash, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is an action for damages allegedly caused by the breach of an employment contract. The issues on appeal are whether there was sufficient evidence from which a jury could conclude that the parties entered into a "lifetime" employment contract and whether plaintiff's damage award should be reduced by the amount of Social Security disability benefits which he received after the alleged breach.

The relevant facts are undisputed. Plaintiff was hired by defendant in 1973. On April 30, 1976, he suffered a compensable low back injury while unloading furniture from a truck. He continued working for defendant until July, 1976, when he began collecting workers' compensation benefits. In April, 1978, he was awarded 25 percent unscheduled low back disability. Believing that he was entitled to permanent total disability, he appealed the determination order. A hearing was held on November 21, 1978.[1]

At the hearing, Regier, a production manager for defendant, testified that a light duty job was available for plaintiff, which he believed plaintiff could perform. On cross-examination, Regier testified to the effect that the job was available and permanent "as long as [defendant has] production to run." Plaintiff returned to work for defendant on November 27, 1978. He was discharged on January 26, 1979, allegedly due to his refusal to perform assigned tasks and to co-workers' complaints.

Defendant's first four assignments of error concern the trial court's denial of its motion for a directed verdict. Only the first of them merits discussion. Defendant contends that the record contains no evidence that would tend to prove that the parties intended to enter into either an express or implied-in-fact employment contract that would not be terminable at will.

We review the facts in the light most favorable to plaintiff. *Brown v. J.C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984). Viewed in that light, we conclude that Regier's

---

[1] Plaintiff's claim for permanent total disability was denied by the referee on January 10, 1979. The referee's order was affirmed by the Workers' Compensation Board on February 7, 1979.

testimony that a light duty job was available for plaintiff as long as defendant had production to run could reasonably be understood to mean that the parties intended to enter into an employment contract, not terminable at will, but to continue for a period measured by defendant's continuing in production. A jury could conclude that such an unusual offer of employment was extended to avoid what the employer may have perceived as a probable award of permanent total disability to plaintiff. Although this may not be the most reasonable conclusion, we do not weigh the evidence and cannot say that there is no evidence from which the jury could make the conclusion. *See Brown v. J.C. Penney Co., supra,* 297 Or at 705. Defendant's motion for a directed verdict was, therefore, properly denied.

■ Plaintiff's fifth assignment of error presents the question whether an employer which is liable for the breach of an employment contract should be allowed to reduce its liability by the amount of Social Security benefits received by the employe after the breach.[2] *United Protective Workers v. Ford Motor Co.,* 223 F2d 49 (7th Cir 1955), is persuasive authority. In that case, the plaintiff was forced to retire at age 65, in violation of the collective bargaining agreement between the parties. In holding that the damage award was properly reduced by the amount of Social Security benefits received, the court stated:

" 'The fundamental basis for an award of damages for a breach of contract is just compensation for those losses which necessarily flow from the breach. * * * Compensation for breach of contract should place an injured party in the position such party would have been in had the contract been fully performed.' * * *

"The status of social security and annuity payments is not material to the decision here. The question for us to decide concerns only the proper damages for breach of contract. If [plaintiff] had not been improperly retired, he would not have received the payments in question. The District Court's judgment awarded him all the wages he would have received if the contract had not been breached, and if the social security and

---

[2] Plaintiff applied for Social Security disability benefits on January 26, 1982. His application was granted on July 25, 1983, and benefits were determined to be payable as of January, 1981. He received a payment of $11,175.83, which represented all benefits due through January, 1984, and thereafter has received monthly payments.

annuity payments are not deducted, [he] will have received more than he would have if the contract had not been breached. '* * * [A] party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed.'

"The well established rule that a tortfeasor cannot escape any of his liability because the injured party was compensated by a third party might appear to be analogous to the situation here. In *United Gas Corp. v. Guillory,* 5 Cir., 207 F2d 308, 309, the court stated the rule followed by the great majority of states: 'The principle is well settled in Louisiana that an injured employee "who sustains a loss as the result of the negligence of another may recover the full amount of his loss from the tortfeasor, even though the loss is partially or wholly made good by an insurer." ' * * *

"* * * * *

"We have been unable to find a single case in which this rule has been carried over to contract damages. In the absence of any binding precedent to the contrary we prefer to follow here the ordinary contract measure of damages rather than the rule in tort cases." 223 F2d at 53-54 (citations omitted). *See also Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 646, 576 P2d 1244 (1978).

Plaintiff contends, however, that *United Protective Workers* is factually distinguishable, because there the Social Security benefits would not have been granted but for the breach of contract by the forced retirement. Thus, plaintiff argues, the deduction of benefits was necessary in order to prevent a double recovery by the plaintiff. In contrast, plaintiff's Social Security benefits here are not a substitute for wages, but are based on "disability." That characterization of his benefits is misleading, and his factual distinction is unconvincing. Although we agree that plaintiff's benefits were not awarded because of his discharge, he fails to acknowledge that, if he had been working for defendant when he applied for those benefits, he would not have been found disabled. The federal regulation provides:

"(a)   We consider all material facts to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled. * * *

"(b)   If you are working and the work you are doing is

substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 CFR § 404.1520 (1986).

The only way that plaintiff could have been found disabled while he was employed by defendant would have been if his employment had not constituted "substantial gainful activity."[3] Nothing in the record indicates that his light duty job was not both substantial and gainful. Thus, if plaintiff is allowed to recover damages without deducting his disability benefits, he would receive a double recovery like that disallowed in *United Protective Workers*. Accordingly, we conclude that the trial court erred in not reducing plaintiff's award by the amount of benefits that he received after the breach and which he will receive until September, 1988, his projected normal retirement date.

Remanded to reduce the judgment by the amount of Social Security benefits plaintiff has received and will receive until September 1, 1988; otherwise affirmed.

---

[3] "Substantial gainful activity" is defined in 20 CFR § 404.1572 (1986):

"Substantial gainful activity is work activity that is both substantial and gainful:

"(a) Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

"(b) Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

"(c) Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."